IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**MICHAEL CALLAGHAN,**

    Plaintiff,

v.                                    Civil Action No. 2:12-3419

**NATALIE E. TENNANT,**
in her official capacity as
West Virginia Secretary of State;
**NATALIE E. TENNANT,**
**GARY A. COLLIAS, WILLIAM N.**
**RENZELLI, and ROBERT RUPP** in
their official capacities as members
of the West Virginia State Election
Commission,

    Defendants.

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO INTERVENE

    Pursuant to Rule 7.1 of the Local Rules of Procedure for the Southern District of West Virginia, proposed Intervenor Allen H. Loughry II submits this Memorandum in support of his motion to intervene in this action pursuant to Rule 24 of the Federal Rules of Civil Procedure.

### PRELIMINARY STATEMENT

    West Virginia enacted its Supreme Court of Appeals Public Campaign Financing Pilot Program (the "Pilot Program") in March 2010. W.Va. Code § 3-12-1 through § 3-12-17. The Pilot Program was enacted pursuant to the recommendations of the West Virginia Independent Commission on Judicial Reform created by then-Governor Joe Manchin.[1] Then-

---

[1] **Error! Main Document Only.** The Honorable Sandra Day O'Connor, retired U.S. Supreme Court Justice, was appointed to serve as the Honorary Chairwoman of the Commission. Other members

1

Governor Manchin created the commission in response to the United States Supreme Court's decision in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009), which was critical of the influence of large sums of money on judicial elections in West Virginia. In *Caperton*, the Supreme Court concluded that extraordinary campaign spending[2] unconstitutionally deprived due process to a litigant whose opponent spent millions of dollars to elect the Justice who cast the deciding vote in the contributor's case. *Id*. at 886, 2265 ("Just as no man is allowed to be the judge in his own cause, similar fears of bias can arise when — without the consent of the other parties — a man chooses the judge in his own cause.").

As explained in the statute, the purpose of the Pilot Program was to create

> [a]n alternative public campaign financing option for candidates running for a seat on the Supreme Court of Appeals [that] will ensure the fairness of democratic elections in this state, protect the Constitutional rights of voters and candidates from the detrimental effects of increasingly large amounts of money being raised and spent to influence the outcome of elections, protect the impartiality and integrity of the judiciary, and strengthen public confidence in the judiciary[.]

W.Va. Code § 3-12-2(9). The Legislature's specific findings and declarations concluded that "[a]s spending by candidates and independent parties increases, so does the perception that

---

of the nine-member Commission included Chairman Carte Goodwin, former general counsel for Gov. Joe Manchin, former U.S. Senator, and currently an attorney at Goodwin & Goodwin; Joyce McConnell, Dean of West Virginia College of Law; Sandra Chapman, President West Virginia State Bar; Thomas Heywood, Esq.; Marvin Masters, Esq. ; Mary McQueen, President National Center for State Courts; Andy MacQueen, Esq.; John McCuskey, Esq.; and, Caprice Roberts, Associate Dean West Virginia University College of Law. *See* (http://www.wv.gov/news/governor/Pages/GovernorMakesAppointmentsToIndependentJudicialReform.aspx). The Commission's 151-page Final Report can be found in its entirety at: (www.scribd.com/.../West-Virginia-Independent-Commission-on-Judicial-Reform-Final-Report).

[2] The Supreme Court explained that "Blankenship's $3 million in contributions were more than the total amount spent by all other Benjamin supporters and three times the amount spent by Benjamin's own committee. Caperton contends that Blankenship spent $1 million more than the total amount spent by the campaign committees of both candidates combined. Benjamin won." *Caperton*, 129 S. Ct. at 2257.

contributors and interested third parties hold too much influence over the judicial process." W.Va. Code § 3-12-2(7). The Legislature further declared that "[t]he detrimental effects of spending large amounts by candidates and independent parties are especially problematic in judicial elections because impartiality is uniquely important to the integrity and credibility of courts." W.Va. Code § 3-12-2(8). Finally, the Legislature stated that funding for the public campaign financing pilot program "furthers important state interests in protecting the integrity of judicial elections and serves to protect the public interest." W.Va. Code § 3-12-2(10).

Proposed Intervenor Allen H. Loughry II is the only candidate for Justice of the Supreme Court of Appeals of West Virginia participating in the Pilot Program. Mr. Loughry seeks to intervene to ensure a vigorous and zealous constitutional defense of the Pilot Program; to ensure that he has the funding to wage a campaign of the caliber his supporters contemplated when they made qualifying donations to his campaign; to help protect the impartiality of the Supreme Court of Appeals of West Virginia—and the appearance of impartiality—through the complete and full use of the public financing program; and to vindicate the compelling state interests cited by the Legislature in adopting the Pilot Program.

Mr. Loughry respectfully applies for leave to intervene as of right as a defendant in this action pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, or, in the alternative, for permissive intervention pursuant to Rule 24(b)(2). As explained below, Mr. Loughry is entitled to intervention as of right because his application is timely, he has real interests in the action, disposition of the action may affect those interests, and no existing party adequately represents his interests. Fed. R. Civ. P. 24(a)(2). In the alternative, permissive intervention should be granted pursuant to Fed. R. Civ. P. 24(b) to allow resolution of the questions of fact and law that Mr. Loughry's defense has in common with those of the current Defendants.

**STATEMENT OF FACTS**

Allen H. Loughry II is a Republican candidate for Justice of the Supreme Court of Appeals of West Virginia.  To promote his candidacy, Mr. Loughry chose to participate in the state's public financing program for Supreme Court candidates, the Pilot Program.  Of a total of four candidates for Supreme Court, Mr. Loughry is the only candidate participating in the Pilot Program.

As required under the Pilot Program, to participate and receive public funds, Mr. Loughry was required to accumulate at least $35,000 but no more than $50,000 in qualifying contributions.  W. Va. Code. § 3-12-9.  He also had to collect at least 500 qualifying contributions and at least 10 percent of the total number of qualifying contributions had to come from each of the State's congressional districts.  W. Va. Code § 3-12-9(c).  Mr. Loughry satisfied these requirements, collecting 676 qualifying contributions for a total of $36,295.  Letter from Allen H. Loughry II to Natalie E. Tennant, W. Va. Secretary of State (Jan. 31, 2012), *Exhibit A*.  Each contributor signed a receipt stating that he or she was contributing to the campaign with the knowledge that it was an attempt to obtain public financing.  W. Va. Code §§ 3-12-3(15), 3-12-9.

After satisfying the eligibility requirements but before receiving any public funds, a participating candidate must be certified, at which point he or she becomes a certified candidate.  W. Va. Code § 3-12-3(2).  To become certified, Mr. Loughry applied to the State Election Commission (the "Commission") and filed a sworn statement that he had and would abide by the law's requirements.  W. Va. Code § 3-12-10(a); *Exhibit A*.  The Commission certified Mr. Loughry in February 2012.  *Exhibit B*.

Under the terms of the Pilot Program, Mr. Loughry has to abide by the expenditure limits that accompany participating in the public financing program. *See* W. Va. Code § 3-12-12(b). This limitation restricts Mr. Loughry's monetary campaign resources to the funds he was able to acquire in qualifying contributions and the amounts he receives in public grants through the program.[3]

Under the Pilot Program, a participating candidate is eligible to receive $50,000, less the amount raised in qualifying contributions, for an uncontested primary race and $350,000, less the amount left over from the primary election, for the contested general election occurring November 6, 2012. W. Va. Code §§ 3-12-11(a)(2), (b)(1), 3-12-12(e). Based on the qualifying contributions he raised, Mr. Loughry received $13,705 for the primary on February 7, 2012; he received a further $350,000 for the general election on June 8, 2012.[4]

If, during the general election period, any non-participating candidate or person making independent expenditures, or a combination thereof, spends (or commits to spend) an amount that exceeds the $350,000 grant by more than 20 percent—i.e., if the non-participating candidate or independent spender (or a combination thereof) spends or commits to spend more than $420,000—a participating candidate is eligible for an additional disbursement of public funds, up to the amount by which the combination of the non-participating candidate and independent expenditure group have exceeded the base grant. W. Va. Code § 3-12-11(e)-(g). These supplemental funds are capped at $700,000. W. Va. Code § 3-12-11(h).

---

[3] Before seeking qualifying contributions, potential publicly-financed candidates are also permitted to raise (and spend) up to $20,000 in "exploratory contributions" in order to explore the viability of pursuing a candidacy. W. Va. Code §§ 3-12-3(4), (5), 3-12-8.

[4] *See* Exhibit B Feb. 3, 2012 State Election Committee Minutes.

On July 6, 2012, non-participating candidate Justice Robin Davis filed a report indicating her campaign had made expenditures of $494,471, an amount over the $420,000 threshold at which a non-participating candidate must file the report. Complaint for Declaratory and Injunctive Relief, Civil Action No. 2:12-3419 (the "Complaint") ¶ 33; W. Va. C.S.R. § 146-5-8.8.a.1. As a result of this spending, under W. Va. Code § 3-12-11(e), Mr. Loughry is currently entitled to receive at least $144,471 in supplemental funds for his campaign.

Despite the unambiguous mandate of W. Va. Code § 3-12-11(e), the Commission has failed to distribute any supplemental funds to Mr. Loughry's campaign. On July 17, the Commission held an emergency meeting to determine whether the Commission would distribute the statutorily prescribed funds under W. Va. Code § 3-12-11(d)-(f). The Commission decided not to distribute the funds on a tie vote of two to two. Complaint ¶ 34. On July 18, the next day, Plaintiff filed the Complaint in this proceeding. On July 30, Mr. Loughry filed a petition for a write of mandamus in the Supreme Court of Appeals of West Virginia, seeking an order compelling the Commission to release the supplemental funds to which his campaign is entitled. Mr. Loughry now moves to intervene in this action..

**ARGUMENT**

**I.     THIS COURT SHOULD ALLOW MR. LOUGHRY TO INTERVENE AS OF RIGHT.**

A proposed intervenor is entitled to intervention as of right where the following requirements are met: (1) the application is timely; (2) the applicant has an interest in the subject matter sufficient to merit intervention; (3) the denial of intervention would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not

adequately represented by the existing parties to the litigation. Fed. R. Civ. P. 24(a)(2); *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001), *rev'd on other grounds*, *Devlin v. Scardelletti*, 536 U.S. 1 (2002). The Fourth Circuit has explained that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1989) (internal quotation marks and citation omitted). Mr. Loughry meets all of the requirements for intervention as of right.

### A. Mr. Loughry Has Acted in a Timely Manner

A motion to intervene must be timely. Fed. R. Civ. P. 24(a). The district court uses its discretion to determine whether a motion to intervene is timely, typically considering "how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for tardiness in moving to intervene." *Greenwich Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 2:09–0351, 2010 WL 3852403, at *1 (S.D. W. Va. Sept. 30, 2010).

Mr. Loughry is seeking to intervene at the very outset of the litigation. No substantial proceedings have occurred and there is no reason that Mr. Loughry's intervention will delay the proceedings or result in any prejudice to the parties. Indeed, Mr. Loughry desires for the litigation to progress quickly so that the supplemental funds can be distributed as soon as possible. The fast-approaching general election only enhances Mr. Loughry's interest in advancing the litigation expeditiously. Finally, Mr. Loughry's motion to intervene is not tardy.[5] Under these circumstances, Mr. Loughry's motion to intervene is unquestionably timely.

---

[5] Moving to intervene early in the litigation is no cause for concern. *See, e.g.*, *Woodland Private Study Group v. State of N.J. Dept. of Environmental Protection*, 616 F. Supp. 794, 799 (D.N.J. 1985) (motion to intervene "filed before defendants' responsive pleadings and less than one week after the filing

### B. Mr. Loughry Has Interests in the Subject of the Action Which May, as a Practical Matter, Be Impaired Absent Intervention

To intervene as of right, the proposed intervenor must have "an interest relating to the property or transaction that is the subject of the action," and the disposition of the case "may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. Proc. 24(a)(2).

Mr. Loughry clearly has an interest in the subject of the action. As admitted in the Complaint, Mr. Loughry has qualified for supplemental funds under the Pilot Program. Complaint ¶¶ 33-36. Mr. Loughry is legally entitled to these public campaign funds, the mandatory release of which the Complaint seeks to enjoin. Complaint ¶¶ 33-36.

There is no question that Mr. Loughry's interests will be practically impaired by the disposition of the case if he is not permitted to intervene. With the general election approaching, Mr. Loughry will be prejudiced if the statutorily-mandated public funds are not released in a timely manner. If Mr. Loughry is not allowed to intervene, the resolution of the case, or failure of the case to reach a resolution quickly, could impair his interests. *See, e.g.*, *NYNEX Corp. v. FCC*, 153 F.R.D. 1 (D. Me. 1994) (intervenor's interest would be impaired by First Amendment challenge to Cable Communications Act should the statute be held unconstitutional).

### C. The Existing Parties May Not Adequately Represent Mr. Loughry's Interests

The inadequate representation prong of Rule 24(a)(2) is satisfied where "it is shown that representation of [the proposed intervenor's] interest '*may be*' inadequate." *United Guar*.

---

of plaintiffs' original complaint" was timely), *vacated on other grounds*, 846 F.2d 921 (3d Cir. 1988); *EEOC v. Boeing Co.*, 109 F.R.D. 6, 9 (W.D. Wash. 1985) (motion to intervene filed before answer and discovery was timely); *U.S. v. Lauer*, 242 F.R.D. 184, 186-87 (D. Conn. 2007) (motion filed "at a very early stage" was timely).

*Residential Ins. Co of Iowa v. Philadelphia Sav. Fund Soc.*, 819 F.2d 473, 475 (4th Cir. 1987) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (emphasis added by Fourth Circuit). The Supreme Court has described this burden as "minimal." *Id*. Given Mr. Loughry's unique position as the only candidate eligible to receive supplemental funds to further his campaign and the fast-approaching nature of the general election, Mr. Loughry easily satisfies this minimal burden.

Mr. Loughry's interests in the dispute may not be adequately defended by the named Defendants. Defendants have already, through official action and public statements, chosen to ignore the clear mandate of the statute. *See* Complaint ¶ 34; *see also Exhibit C* (stating that the Commission would release only the initial primary and general payments, not the supplemental funds). Moreover, unlike Mr. Loughry's direct and acute interests in the outcome of this litigation, the defendants only have a general interest in upholding the law, while Mr. Loughry has a direct interest in receiving the supplemental campaign funds. In *In re Sierra Club*, the Fourth Circuit held that the Sierra Club's interests would not be adequately represented by the South Carolina Department of Health and Environmental Control, which "in theory, should represent all of the citizens of the state," even though they both sought to protect the same environmental regulation. *In re Sierra Club,* 945 F.2d 776, 780 (4th Cir. 1991). As the court explained,

> Sierra Club does not need to consider the interests of all South Carolina citizens and it does not have an obligation, though DHEC does, to consider its position vis-a-vis the national union. Although the interests of Sierra Club and South Carolina DHEC may converge at the point of arguing that Regulation 61-99 does not violate the Commerce Clause, the interests may diverge at points involving the appropriate disposition of sections of Regulation 61-99 that may not violate the Commerce Clause, the balance of hardships accruing to the parties if part of Regulation 61-99 is enjoined by preliminary injunction, and the public interest factor to be weighed in a preliminary injunction analysis.

*Id. See also Trbovich*, 404 U.S. at 538-39 (finding intervention by union proper where Secretary of Labor had to defend both union members' interest and the "vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member.") (internal quotation marks omitted). Here, though Defendants have a generalized obligation to defend the West Virginia statute, they lack the particularized interest that Mr. Loughry is uniquely positioned to represent.

Moreover, while Defendants are charged with overseeing the Pilot Program's supplemental funds provisions, they have thus far refused to carry out the obligation to disburse supplemental funds. This reluctance to enforce the law they are charged with defending provides additional support for concluding that Mr. Loughry's interest is distinct from Defendants'. This principle justified intervention in *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior*, 100 F.3d 837 (10th Cir. 1996), where the interests of an intervenor naturalist who had been "at the forefront of efforts to protect" the Mexican Spotted Owl were inadequately protected by the Department of the Interior where the intervenor's particular interest could differ from the Department's interest and the Department had shown reluctance to protect the owl in the first place. Here, Defendants may not act with the diligence and haste necessary to ensure that Mr. Loughry receives the supplemental funds to which he is entitled as soon as possible.

Only Mr. Loughry is capable of adequately protecting his own interests in this case. The facts easily support a finding that there is sufficient uncertainty surrounding the defense of this action to reach the "minimal" "may be inadequate" threshold.[6]

---

[6] *See also Freedom From Religion Foundation, Inc. v. Weber*, No. CV 12-19-M-DLC, 2012 WL 205202 (D. Mont. May 31, 2012) (allowing Knights of Columbus to intervene in case making

Because proposed Intervenor Mr. Loughry satisfies all four prongs necessary for intervention as of right under Fed. R. Civ. P. 24(a)(2), intervention as of right should be granted.

## II.   IN THE ALTERNATIVE, PERMISSIVE INTERVENTION IS WARRANTED.

Even if this Court were to conclude that Mr. Loughry is not entitled to intervene as of right, the Court should nonetheless exercise its discretion to grant permissive intervention under Fed. R. Civ. P. 24(b)(2), which provides:

> Upon timely application anyone may be permitted to intervene in an action . . . when the applicant's claim or defense and the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

*Id.*

Mr. Loughry maintains that the public financing program is constitutional in its entirety, and his position raises identical issues of law and fact as the Complaint. As explained above, Mr. Loughry not only has a significant and direct interest in this litigation, but the *strongest* interest in it of anyone: his, and only his, ability to wage a competitive campaign will depend upon this case's outcome. Mr. Loughry's participation in this litigation would not unduly delay adjudication because he has a direct interest in reaching a resolution as quickly as possible. No original party to this action would be prejudiced by his intervention because the action is in its initial stages. Finally, as discussed above, the motion to intervene is timely.

---

constitutional challenge of permit issued by government allowing the Knights to place a religious statue in a national forest and where government previously refused to renew permit then later allowed renewal).

## CONCLUSION

For the foregoing reasons, this Court should grant Mr. Loughry's motion to intervene.

Respectfully submitted,

**ALLEN H. LOUGHRY II,**

 /s/  Marc E. Williams
Marc E. Williams (WVBN 4062)
Randall L. Saunders (WVBN 10162)
Jenna E. Hess (WVBN 11416)
NELSON MULLINS RILEY &
SCARBOROUGH LLP
949 Third Avenue, Suite 200
Huntington, WV 25701
(304) 526-3500
marc.williams@nelsonmullins.com

J. Adam Skaggs, Esquire
(Pro Hac Vice pending)
Matthew Menendez, Esquire
(Pro Hac Vice pending)
Brennan Center for Justice
at NYU School of Law
161 Avenue of the Americas, 12th Floor
New York, New York 10013

**COUNSEL FOR INTERVENOR,
ALLEN H. LOUGHRY II**